19  213
28  336

[Filed May 8, 1890.]

STATE OF OREGON, RESPONDENT, *v.* C. C. TOWNSEND, APPELLANT.

ACCOMPLICE—CORROBORATIVE EVIDENCE.—Where the corroborative evidence showed that the defendant and his accomplice were together at or near the place where the larceny of the animal was committed under circumstances which indicated concert between them in furtherance of a common purpose; *held,* that the evidence did tend in some degree to connect the defendant with the commission of the crime.

APPEAL from Umatilla county: JAS. A. FEE, judge.

The defendant was jointly indicted with others, and convicted of the crime of larceny of a cow, charged to have been committed on the fourteenth day of January, 1889. One Jed Beal, a co-defendant, testified as an accomplice to the particulars of the stealing of the cow by the defendant and himself. The evidence corroborative of the accomplice Beal, testified to by one Charles Stencil, was as follows. "About January 14, 1889, I was at Frank Beal's place, about four miles from town. At one time that night, I think about 8 o'clock P. M., Jed Beal was there, and he left, and a little later he came back to the house with the defendant Townsend. Townsend was then introduced to me by Jed Beal as 'Jack Morton.' In a short time they left again. I know the pasture where the cow was; I heard next day the cow was missing; there was no one else at the house when the defendant came."

The owner of the cow also testified that she was stolen from his pasture on the night of January 14, 1889. The other evidence in the case shows that the place where the witness Stencil saw the defendant Townsend that night was on Wild Horse creek, between four and five miles from the town of Pendleton, and a short distance from where the cow was stolen.

The State having rested, the counsel for the defendant moved for a non-suit on the ground that there was not sufficient evidence of the defendant's guilt to be submitted to the jury without further evidence.

*J. C. Leasure,* for Appellant.

*J. L. Land,* district attorney, and *J. J. Balleray,* for State.

LORD, J., delivered the opinion of the court.

The question raised is, whether the testimony of the accomplice Beal was sufficiently corroborated to sustain the verdict and judgment. The testimony of the accomplice is full, stating the circumstances in detail under which he and the defendant, on the night charged, stole

the cow from the pasture of her owner, drove her to the slaughter pen in Pendleton, and delivered her to the other co-defendants, as had been previously arranged, where she was slaughtered. The contention for the defendant is, that the corroborative evidence only shows that he was in the vicinity where the crime was committed, and that under the ruling in *State* v. *Odell*, 8 Or. 30, such evidence was held to be insufficient. As this case is relied upon, it needs to be examined to understand the principle applied. In that case "the testimony of the other witnesses only tended to show that Odell was in the town about the time of the commission of the alleged crime, and that a sack of flour was missed from the place where the larceny was alleged to have been committed. Such evidence, said the court, did not tend to connect the appellant with the commission of the crime." And again to the same point in refusing to give the following instruction: "The fact of the presence of the defendant Odell in the same town at the time of the commission of the offense, or immediately before or afterwards, is not sufficient evidence to connect the defendant Odell with the commission of the crime charged in the indictment," which the court thought pertinent to the facts, and should have been given, and was therefore error to refuse it. This ruling was undoubtedly correct, as there was nothing in the mere fact of the presence of the defendant Odell in the same town that was unusual, or which was not likely to occur without any previous arrangement between him and his co-defendant to commit the offense. But where the facts show that the defendant and his accomplice were together at a place under circumstances not likely to have occurred unless there had been concert between them, the case presents a different aspect. In the former—*State* v. *Odell* —there was nothing in the circumstances not likely to happen without any previous arrangement between the defendant and his accomplice, and alone, therefore, could not have the effect or tend to connect the defendant with the commission of the crime; while in the latter, when the

circumstances are such as are not likely to occur without some previous understanding or concert between them, they indicate an identity of purpose which tends to connect the defendant with the commission of the crime.

In the case at bar, the defendant and his accomplice are not only found together at an out-of-the-way place, where they could have no business, and would not likely be without some previous arrangement between them, but it is at the time and place from which the cow was stolen. Nor is this all. The facts show that Frank Beal, the brother of the accomplice, lived near the pasture from which the cow was stolen, which, perhaps, might furnish some excuse under some circumstances for the presence of Jed Beal in that vicinity; but that his accomplice did not take the defendant in the house when he first came, but that a little later he left the house and came back with the defendant, whom he introduced under an assumed name. They are thus not only together at an unusual hour and place in the vicinity of the place from which the cow was stolen, but they have advanced with the precaution of finding out that there is no one at the house but Stencil, to whom the defendant is introduced under a false name. Why masque his identity under a false name at such a place, under the circumstances, unless for the purpose of concealment, or to avoid the discovery of some contemplated act? He could furnish no excuse for being where he was under an *alias*, and if it be conceded that his accomplice, under some circumstances, may have had one by reason of his brother living near the place where the cow was stolen, it is utterly destroyed by his conduct in the premises, which indicates a formed design to mislead as to the defendant, and of which the defendant was cognizant, and concerning which he understood the purpose to be served thereby. Taking these facts together, do they not tend to show that the defendant and his accomplice were at the place where the larceny of the cow was committed by concert between them, formed in furtherance of a common purpose; and that their conduct at the time was characterized by devices

intended to mislead, and to protect the defendant against discovery of the crime contemplated? They show that the defendant was not only in the vicinity when the crime was committed, but that he was there under a false name, and at night, and under circumstances not likely to occur without concert between him and his accomplice in futherance of some common enterprise. In such case it can hardly be said that the facts do not tend in some degree to connect the defendant with the commission of the crime. As this is the only question we deem necessary to be decided on this record, it results there was no error, and that the judgment must be affirmed.