Argued January 17, affirmed May 8, reconsideration denied June 14, petition for review denied September 19, 1978

# STATE OF OREGON, *Respondent,*

*v.*

# ROGER DOYLE SCHOEN, *Appellant.*

## (No. 76-155C, CA 8858)

578 P2d 420

Sidney E. Ainsworth, Ashland, argued the cause for appellant. On the brief were Jack Davis and Davis, Ainsworth & Pinnock, Ashland.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson, and Joseph, Judges.

LEE, J.

**LEE, J.**

Defendant appeals his conviction of criminal mischief in the first degree, ORS 164.365. Defendant contends that the trial court erred (1) in denying defendant's motion to exclude testimony regarding other crimes, and (2) in denying defendant's motion for acquittal for lack of corroboration of accomplice's testimony.

The evidence shows that on Friday, January 30, 1976, defendant, Roger Schoen, and his 16-year-old employee, Michael Boutin, drove to Klamath Falls to shop for farm equipment. Boutin testified that he and defendant stopped by defendant's ranch and picked up some beer and a slingshot enroute to the Thunderbird Motel in Klamath Falls, Oregon, where they registered; that on Saturday, January 31, 1976, he and defendant shopped for farm equipment, visiting approximately five dealers including Boyd Company in Merrill, Oregon; that they ate pizza for dinner, and subsequently defendant drove about Klamath Falls while Boutin shot at car windows with a slingshot using beebee projectiles. Boutin further testified that on Sunday, February 1, 1976, he and defendant left their motel room and proceeded approximately 18 miles to Boyd Company where they "busted some tractor windows out," after which they proceeded to Boutin's home in Siskiyou County, California. Defendant is charged with intentionally and unlawfully damaging property of Boyd Company by using "steel pellets propelled by a slingshot" to break tractor cab windows in an amount exceeding $1,000.

Defendant testified that he had only a couple of beers on Friday and that on Saturday evening he fell asleep watching television and was in the motel room until the next morning. Defendant stated further that he awoke at about 9:30 Sunday morning and that Boutin awakened later; that he checked out of the motel at about 1 p.m. while Boutin loaded the pickup and they then drove to Boyd Company to take another

look at a plow which he was considering buying; that defendant did not notice any broken windows at Boyd Company nor did he break any; and that defendant and Boutin then continued their travel to Boutin's home.

The maid at the Thunderbird Motel testified that the room which defendant and Boutin occupied was left in a shambles and that when she examined it she found three beebees. These beebees were received in evidence at trial. The motel manager testified that a window in his car parked adjacent to the motel had been broken and he found a beebee nearby. This beebee was also received in evidence. We note that it was the same size as those found in defendant's motel room and also the same size as a beebee found elsewhere in Klamath Falls near a car with a dent in the body and similar in size and shape to beebees observed at Boyd Company.

Mr. Boyd testified that he arrived at his business location in Merrill, Oregon, at approximately 8 o'clock Monday morning and observed a number of tractors that had broken windows which had not been broken when he departed his business premises on Saturday. Boyd testified that he found beebees that were "flat on one side"—however, these beebees were not offered in evidence. Instead, the prosecution offered five steel ballbearings which were substantially larger than the beebees described by Boyd and those found in Klamath Falls.

On Sunday evening, defendant was contacted at his home by the police. Defendant told police that he had been to Klamath Falls that weekend and that he had stayed at the Thunderbird Motel and that he had some beebees, three of which he subsequently turned over to the police. These beebees were the same size as those found in Klamath Falls but were much smaller than the ballbearings found at Boyd Company. Several months later defendant discovered a slingshot in a shed on his property which he introduced into evidence

at the trial. When Boutin was originally questioned by the police about the weekend episode he denied drinking alcohol or shooting windows but subsequently confessed his involvement and was placed on probation.

The first issue is whether the trial court erred in denying defendant's motion to exclude testimony regarding the other crimes committed on Saturday night. Defendant contends that the evidence that other crimes were committed on Saturday night was irrelevant and highly prejudicial.

■ The problem concerning the admissibility of evidence of other offenses in criminal prosecutions is, in essence, a special aspect of the broad general problem of relevancy. *State of Oregon v. Long,* 195 Or 81, 115, 244 P2d 1033 (1952); *State v. Hockings,* 29 Or App 139, 145, 562 P2d 587, *rev den* (1977), *cert den* — US —— (1978). If the evidence is relevant, it must still have more probative than prejudicial impact to be admissible. *State v Hockings, supra* at 147; *State v. Williams,* 16 Or App 361, 363, 518 P2d 1049, *rev den* (1974). Therefore, the threshold question is whether the evidence of the Saturday night incidents is relevant to prove some facet of the crime charged.

■■ It was the state's theory that the window breaking incident at the Boyd Company was the culmination of a drunken weekend defendant and Boutin spent together in the Klamath Falls area. Consequently the state introduced evidence of defendant and Boutin's activities during that weekend. Such evidence tended to prove that defendant had been involved in a weekend spree of criminal activity. The evidence, therefore, was relevant to complete the story of the crime charged. *See State of Oregon v. Long, supra* at 113. The state is not required to "sanitize" its evidence by deleting background information to the point that the evidence actually presented seems improbable or incredible. *State v. Remington,* 15 Or App 170, 172, 515 P2d 189 (1973), *rev den* (1974). Since evidence of the

weekend activities in Klamath Falls was relevant, defendant cannot exclude it just because it was criminal. *State of Oregon v. Long, supra* at 113; *State v. Hockings, supra* at 147.

■ Having determined that the evidence was relevant, the court must find that its probative value outweighs its prejudicial aspect in order that it be admissible. Three factors are commonly considered in this weighing process: the need for the evidence, its persuasiveness and its inflammatory effect upon the jury. *State v. Hockings, supra* at 147; *State v. Williams, supra* at 363.

■ In the instant case, the evidence was needed to complete the story of the crime and to bolster Boutin's credibility. The evidence was convincing in that: defendant was with Boutin at the location of at least two of the vandalized vehicles; beebees found in defendant's room and those recovered at the scenes of the two vandalized vehicles resembled the beebees described by Boyd. We agree with the trial court's determination that the probative value of the evidence of other crimes outweighed its prejudicial aspect. The evidence was properly admitted.

The second issue is whether the trial court erred in denying defendant's motion for acquittal on the ground of lack of corroboration of the accomplice's testimony. ORS 136.440 (1) provides:

"A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission."

■ The corroboration required by ORS 136.440 (1) need not be adequate by itself to support defendant's conviction. *State v. Brake,* 99 Or 310, 314, 195 P 583 (1921). The corroborating evidence may be circumstantial. *State v. Caldwell,* 241 Or 355, 360-61, 405 P2d 847 (1965). It is sufficient for consideration by the jury if

there is some evidence, however slight, tending to connect the defendant to the commission of the offense. *State v. Duncan,* 248 Or 288, 290, 434 P2d 336 (1967); *State v. Rosser,* 162 Or 293, 342, 86 P2d 441, 87 P2d 783, 91 P2d 295 (1939). A slingshot was found on defendant's property and beebees were found in defendant's motel room. These items were sufficient to connect the defendant with the commission of the offense and provide the corroboration required by ORS 136.440(1).

Affirmed.

**JOSEPH, J.,** dissenting.

While I agree generally with the tests applied by the majority in determining whether or not to admit "other crimes" evidence, I cannot agree that those tests were properly applied.

The relevancy of what might have happened in Klamath Falls on Saturday night to prove what happened in Merrill 18 miles away and half a day later is too attenuated. Its relevance, if any, lies almost entirely in its capacity to prejudice the defendant. If crime there was in Klamath Falls, it lay with the state to charge it and prove it beyond a reasonable doubt.

On the element of prejudice compared with need, the scale tilts nearly to vertical on the side of prejudice. As I view the other evidence, the need for the challenged evidence was mainly to shore up the accomplice, who had every reason to fabricate a tale of joint misadventure. Whether it was convincing should have nothing to do with its admissibility. That leaves the question of whether the evidence was "inflammatory," and I would hold that, taken as a whole and not by some of the separate pieces, that is all it was.

I therefore respectfully dissent.